IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARVA WATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV. ACT. NO.  2:11CV126-MEF |
| | ) | (WO) |
| KID ONE TRANSPORT, | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a Title VII case in which Marva Watkins, appearing *pro se*, sued her former

employer, Kid One Transport ("Kid One"), alleging discrimination and wrongful termination

on the basis of race and gender.  Now pending before the court is the motion for summary

judgment (Doc. 34) filed by Kid One.  Also pending before the court is the motion for

summary judgment (Doc. 39) filed by Marva Watkins.  Upon consideration of the motions,

the court concludes that Kid One's motion for summary judgment (Doc. 34) is due to be

granted, and Marva Watkins's motion for summary judgment (Doc. 39) is due to be denied.

**Standard of Review**

"Summary judgment is appropriate 'if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show there is no

genuine [dispute[1]] as to any material fact and that the moving party is entitled to judgment

---

[1]Effective December 1, 2010, the language of Rule 56(a) was amended. The word "dispute" replaced
the word "issue" to "better reflect [ ] the focus of a summary-judgment determination." Fed. R. Civ. P. 56(a),
Advisory Committee Notes, 2010 Amendments.

as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir.2007) (per curiam) (citation omitted); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322–324.

Once the movant meets his evidentiary burden and demonstrates the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Celotex*, 477 U.S. at 324; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *see also* Fed. R. Civ. P. 56(c) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

To survive the movant's properly supported motion for summary judgment, a party is required to produce "sufficient [favorable] evidence" "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." Id. at 249–250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576–1577 (11th Cir. 1990) (quoting *Anderson*, *supra*). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). Hence, when a nonmoving party fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to its case and on which the nonmovant will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof

3

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. 5800 SW 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of Dep't of Children & Family Servs.,* 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co, Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323–324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine

4

dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).  However, if there is a conflict in the evidence, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *Ruiz de Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1356 (11th Cir.2000).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. *Beard v. Banks*, 548 U .S. 521, 529 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir.1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

### Facts[2]

Kid One is a nonprofit corporation that provides free transportation to healthcare for economically disadvantaged children and expectant mothers.  (Doc. 36-2 ¶ 2).  Kid One operates a fleet of 19 vehicles in 35 Alabama counties in central and north-central Alabama.

_____

[2]At this stage of the proceedings, this court takes the facts alleged by the non-movant as true and construes them in the light most favorable to her. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000) (citations omitted) ("In assessing whether there is any 'genuine issue' for trial, the court 'must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party,' ... and 'resolve all reasonable doubts about the facts in favor of the nonmovant.' ... Moreover, the court must avoid weighing conflicting evidence or making credibility determinations...."). Thus, the facts set forth herein are drafted relying on the undisputed facts and construing the facts in the light most favorable to Watkins, the non-moving party.

*Id*. Kid One requires its drivers to have a safe driving record and a valid driver's license and to be eligible for coverage under Kid One's liability insurance policy. (Doc. 36-2 ¶¶ 3-4). When Kid One's insurance carrier cancels coverage for a driver on the basis of his or her driving record, Kid One terminates the driver's employment unless the driver can present evidence that will permit the insurance company to reinstate coverage. (Doc. 36-2 ¶ 5).

From May 1, 2006 until June 2010, Kid One employed Marva Watkins as a driver. (Doc. 36-2 ¶ 7). Watkins's job required her to transport Kid One's clients from the Montgomery metropolitan area to healthcare appointments throughout Alabama, often in Birmingham. *Id*. Between June 2008 and March 2010, Watkins was involved in four separate traffic accidents while serving as a driver for Kid One. *Id*.

On June 13, 2008, while driving for Kid One, Watkins was involved in an automobile accident caused by a hit-and-run driver. (Doc. 36-3 p. 60). On October 22, 2008, while driving for Kid One, Watkins's vehicle was struck from behind by another vehicle. *Id*.

On March 10, 2011, Watkins was transporting Kid One's clients northward on Interstate 65 in the rain. (Doc. 36-3 p. 42). She slowed her speed to fifty miles an hour due to the weather conditions, but the vehicle hydroplaned, began to spin, went into a drainage ditch in the median, turned on its side, slid the rest of the way across the median, and came to a stop on its side in the left-hand southbound lane of the interstate. *Id*. One of Watkins's passengers was injured. (Doc. 36-3 p. 43).

On March 19th, 2010, the Kid One vehicle Watkins was driving was rear-ended by

another vehicle.  (Doc. 36-3 p. 44).

On June 4, 2010, Kid One's insurance carrier contacted Karen Peterlin, Kid One's CEO, and informed her that liability coverage would be cancelled for two of Kid One's drivers: Watkins and Willie Scott.  (Doc. 36-2 ¶ 8).  The insurer advised Peterlin to remove Watkins and Scott from driving duties and informed her that, if Watkins or Scott were involved in an accident, the insurer would not provide coverage.  *Id*.  Watkins and Scott are both African-American.  (Doc. 36-2 ¶ 11).

On June 7, 2010, Peterlin, on behalf of Kid One, provided the following letter to Watkins:

> Dear Ms. Watkins,
>
> Effective today, you are terminated as a driver for Kid One Transport.  This termination is due to the fact that our insurance company will not provide insurance coverage for you.  This termination of coverage is normally the result of repeated moving violations and accidents over the past three years.
>
> If you feel this termination of coverage is incorrect, you will have to provide us with an official motor vehicle report disputing these violations.  If the documentation you provide allows us to have you reinstated on our insurance, you will be eligible for re-employment.

(Doc. 40-1).

On June 10, 2010, Peterlin, on behalf of Kid One, provided a letter to Willie Scott which was substantively identical[3] to Kid One's June 7, 2010 letter to Watkins.  (Doc. 40-1

---

[3]The only substantive difference between Kid One's June 7, 2010 letter to Watkins and its June 10, 2010 letter to Scott was that the letter to Scott included the following sentence: "You have been a loyal and faithful employee and [I] can provide you with a letter of reference if you need one."  (Doc. 40-1 p. 9).

p. 9). Willie Scott also submitted documentation to Peterlin to contest the insurance carrier's denial of coverage, which Peterlin forwarded to the insurer. (Doc. 36-2 ¶ 11). The insurance company reinstated Scott's coverage, and Scott was reinstated as a driver for Kid One. *Id*; (Doc. 40-1 p. 10).

On June 9, 2010, Marva Watkins submitted a letter and documentation to Kid One in an effort to be reinstated under Kid One's insurance policy and re-hired as a driver. (Doc. 36-2 ¶ 10). Peterlin forwarded Watkins's documentation to the insurer, who then informed Peterlin that it would not reinstate coverage for Watkins. *Id*.

On June 11, 2010, Peterlin, on behalf of Kid One, provided Watkins with the following letter:

> Dear Ms. Watkins,
>
> I received your letter, the motor vehicle report, and the letter from Mr. Darius Welch, Claims Adjuster. This information, along with the police reports, was forwarded though our agent to our insurance company for a determination on reinstatement of you onto our insurance policy. After their review, it has been determined that you do not meet their driver acceptable guidelines and are not eligible for coverage on our insurance. As a result, your termination as a driver for Kid One is still in effect.
>
> In regards to your one car "weather" related accident, in all single car accidents the driver is at fault. This accident was the worst in Kid One's history. The accident resulted in a less than one year old vehicle being totaled and bodily injury to several of the passengers on-board [sic]. The result was an insurance claim in excess of $40,000. This claim will have a negative effect on the organization's insurance rate for a period of three to five years.
>
> In regards to counseling on accidents, every year you receive defensive driver training and you were given a copy of the driver's handbook. Both "at-fault" and "no-fault" accidents are covered in detail in both of these sources.

8

In regards to pay, pay is based upon time and experience and not location. Rate of pay should not be discussed among employees and sharing this type of information is grounds for immediate dismissal.  This is covered in the employee's handbook under sharing confidential information.

In regards to advertising positions, as the Executive Director, I can announce the recruitment of positions as I determine.  The recruitment of new employees i[s] not tied to a specific person.

You have no appeal actions in this matter.  A driver who is ineligible for insurance coverage cannot be retained.

(Doc. 40-1 p. 2).

After terminating Watkins's employment, Kid One hired two African-American females to take over Watkins's job responsibilities.  (Doc. 36-2 ¶ 15).  On July 11, 2011, Kid One terminated the employment of Margaret Harris, who was one of the two drivers Kid One hired to replace Watkins.  (Doc. 40-1 p. 13; Doc. 36-2 ¶ 15).  Peterlin provided Harris with a letter informing her that her employment was terminated because Kid One's insurance company would no longer provide coverage for her due to her driving record.  (Doc. 40-1 p. 13).

The pay rate for full-time drivers at Kid One is based on two factors: the drivers' previous driving experience and their length of employment with Kid One. Experienced drivers begin at a pay rate of $10.50 per hour, which is subject to increase based on seniority and annual evaluations.  (Doc. 36-2 ¶ 6).  Drivers with no previous experience begin at a pay rate of $9.50 per hour, which is subject to increase based on seniority and annual evaluations. *Id*.  At the time of her discharge from employment with Kid One, Watkins received a pay rate

of $10.45 per hour. (Doc. 36-2 ¶ 13).  Kid One paid $9.50 per hour to two male drivers with

no experience who began their employment with Kid One after Watkins did.  *Id*.  One of the

drivers hired to replace Watkins was an African-American female who had previous driving

experience; she started her employment at Kid One at a pay rate of $10.50 per hour.  (Doc.

36-2 ¶ 14).  Three African-American male drivers who worked for Kid One were paid more

than Watkins was.  (Doc. 40-1 pp. 5, 17-19).  One of the three drivers was paid $13.43 per

hour; one was paid $12.00 per hour; and one was paid $12.05 per hour.  *Id*.

On August 24, 2010, Watkins filed a charge of discrimination against Kid One

alleging that she was discharged on the basis of her race.  (Doc. 1-1 p. 1).  Watkins's

allegations as set forth in her EEOC discrimination charge were as follows:

> My race is Black. I began my employment with the above named employer on
> May 1, 2005, as a transportation driver. During my employment, I was
> involved in three accidents that were caused by other drivers, and one accident
> that was weather related. All these accidents were immediately reported to the
> employer. On June 7, 2010, I was notified by Karen Peterlin, White CEO, that
> the employer's insurance provider would no longer cover me because of
> accidents.
>
> I believe the reason provided by the employer for my discharge was a pretext,
> and that I was discharged because of my race, Black, in violation of Title VII
> of the Civil Rights Act of 1964, as amended. I am aware of a White driver who
> has had accidents and was not discharged.

*Id*.

On December 2, 2010, the EEOC mailed Watkins a notice that her EEOC charge was

dismissed.  (Doc. 1-1 p. 2).

On February 22, 2010, Watkins filed a complaint in this court against Kid One.  (Doc.

10

1).  Watkins alleged that Kid One deprived her of vacation pay, paid her lower wages than other employees, and terminated her employment illegally on the basis of her race and gender.  (Doc. 1).  On October 6, 2011, Kid One filed a motion for summary judgment (Doc. 34).  On October 24, 2011, Marva Watkins filed a response to Kid One's motion and a cross-motion for summary judgment (Doc. 34).

In support of her summary judgment response and cross-motion for summary judgment, Watkins submitted  signed letters[4] from three former Kid One drivers.   A letter signed by Larry Watkins,[5] an African-American male, stated that Kid One often did not allow him and the other drivers to take lunch breaks, but required them to drive long hours in unsafe vehicles.  (Doc. 36-3 p. 21; Doc. 40-1 p. 4).  Larry Watkins also stated that Peterlin "had no compassion for the drivers," would address drivers and staff "as if she was talking to five year olds," and "created a hostile work environment for [Larry Watkins] and the other [Kid One] drivers as well."  (Doc. 40-1 p. 4).  Larry Watkins alleged that he and other drivers were "terminated wrongfully" from employment with Kid One.  *Id*.  On February 8, 2010, Kid One provided Larry Watkins a letter informing him that it was terminating his employment because he stopped at a store and purchased a beer on his way home from work

---

[4]Two of these signed letters were notarized.  (Doc. 40-1 pp. 4-5).  Although Watkins, who is proceeding *pro se*, did not submit affidavits from the authors of the letters, the court has considered the letters on summary judgment because Watkins could conceivably call the letters' authors to testify to the truth of their contents at trial, and because Kid One did not move to strike them.  *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

[5]Larry Watkins is or was Marva Watkins's husband.  (Doc. 36-3 p. 23).

one day without getting permission from the dispatcher to make an "unrelated work stop," and then he transported the beer in the Kid One vehicle in violation of Kid One policy. (Doc. 40-1 p. 8). Upon terminating Larry Watkins's employment, Kid One paid him for unused annual leave, minus the cost of a "Toyota emblem that [he] lost when [he] drove [Kid One's] vehicle into a large pot hole." *Id*.

A letter signed by Steven Johnson, an African-American male, alleged that Peterlin yelled at him unreasonably when he sought to have new tires placed on the vehicle he drove for Kid One. (Doc. 36-3 p. 21; Doc. 40-1 p. 5). Johnson also stated in his letter that he once informed Peterlin that some of the drivers felt that she brought a negative atmosphere to Kid One and that he was telling her so because "we [the drivers] all want to be your friend as we have to the other CEO's." (Doc. 40-1 p. 5). According to Johnson, Peterlin responded "[i]n a wrathful tone" as follows: "I don't want to be your friend. I don't want to hang out with you. I came to work to do a job and I don't need to see you until you are on the clock. That's how I treated my soldiers and that's how I will treat you." *Id*. Johnson alleged that Peterlin's comment reflected the "kind of person [she] truly is around the Kid One employees." In October 2009, Kid One terminated Johnson's employment as a driver due to his driving record. (Doc. 40-1 p. 7). Upon terminating Johnson's employment, Kid One paid Johnson for unused annual leave. *Id*.

Sammie Patterson, a Caucasian male, signed a letter stating that he drove 32-45 hours per week for Kid One even though he was hired as a part-time employee for 24 hours per

12

week.  (Doc. 36-3 p. 63; Doc. 40-1 p. 6).  Patterson stated that the drivers were often required to drive without a lunch break.   (Doc. 40-1 p. 6).  Patterson cited instances in which he personally drove for eleven hours or seventeen and one-half hours without a break.  *Id*. Patterson alleged that, on the company logs, his "time was docked so that the books looked accurate," and his pay was docked for breaks not taken.  *Id*.  When Patterson complained to Peterson, she informed him that he could find other employment if he did not like the conditions at Kid One.  *Id*.  Patterson decided to leave Kid One on advice of his doctor after being hospitalized for physical exhaustion.  *Id*.  As a diabetic, Patterson felt that continuing to drive without lunch breaks could create a safety hazard.  *Id*.  (*See also* Doc. 41-1 p. 14).

## Discussion

### I.   Race Discrimination - Title VII.

In her complaint, Watkins alleges that Kid One deprived her of vacation pay, paid her lower wages than other employees, and terminated her employment on the basis of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  (Doc. 1). To make out a prima facie case of racial discrimination under Title VII, "a plaintiff must show (1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably."  *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citing *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (per curiam)).

13

The undisputed evidence does not support the inference that Kid One treated non-African-American employees more favorably than it treated Watkins. Although there is evidence that other African-American employees were paid more than Watkins (Doc. 36-2 ¶ 14; *see also* Doc. 40-1), the record contains no evidence that employees of other races were paid more than Watkins. The record also contains no evidence that employees of other races were allowed to continue their employment as drivers when Kid One's liability insurer denied coverage for those employees, or that employees of other races were paid for unaccrued leave time upon termination of their employment. Watkins argues Kid One paid Larry Watkins and Steven Johnson for unaccrued leave time. However, Larry Watkins and Steven Johnson are both African-American. (Doc. 36-3 p. 21). Watkins argues also that Willie Scott, another African-American, was rehired when Kid One's insurance company agreed to provide coverage for him despite initially declining to provide that coverage. (Doc. 40). Although Scott, Johnson, and Larry Watkins were treated differently than Watkins, they are not "situated outside her class" for purposes of her race discrimination claims. Thus, Kid One's relatively more favorable treatment of those employees does not support Watkins's claim of racial discrimination. *See Crawford*, 529 F.3d at 970 (holding that, to prevail on a Title VII claim, a plaintiff must prove that other employees outside of the plaintiff's protected class were treated differently than the plaintiff).

Viewing the evidence in the light most favorable to Watkins and drawing from it those inferences most favorable to the plaintiff's case, the evidence shows, at most, that Kid One

drivers were treated with equal hostility and disregard regardless of race.  Watkins asserts that Linda Hannon, a white female, was granted extensive lunch breaks[6] and that, as the dispatcher for Kid One, Hannon denied lunch breaks to the drivers.  (Doc. 40 pp. 3, 6).  However, the evidence submitted by Watkins shows that Hannon and Kid One denied lunch breaks to all of the drivers, not just the African-American ones.  (Doc. 40 pp. 4-6).  Sammie Patterson, a Caucasian male, left employment at Kid One in part because Hannon required him to drive long hours while denying him lunch breaks and then allegedly changed the log books to make it appear that he had been given breaks.   (Doc. 36-3 p. 63; Doc. 40-1 p. 6).  Patterson and Larry Watkins both indicated that all drivers were denied breaks and required to drive long hours, not just the African-American ones.  (Doc. 40-1 pp. 4, 6).  Larry Watkins complained that Peterlin created a "hostile work environment" for all "the drivers" and "Kid One employees."  (Doc. 40-1 p.  4).  Johnson also complained that Peterlin created an unpleasant "atmosphere" for all of the drivers and "the Kid One employees."  (Doc. 40-1 p. 5).

Watkins also argues that Larry Cabaniss, a white male driver, was granted permission to work in the office and was given other favorable treatment.  (Doc. 40 pp. 2-3).  She alleges that Cabaniss was allowed to "sit in the office and drink coffee and gossip about other drivers" while the other drivers worked.  *Id*; *see also* Doc. 36-3 pp. 50-51.  In her brief,

---

[6]Of course, differential treatment of Hannon by allowing her to take lunch breaks does not matter because, as a dispatcher, she is not similarly situated with Watkins, a driver.  *See* Crawford, 529 F.3d at 970 (holding that a Title VII plaintiff must prove that "her employer treated *similarly situated* employees outside her class more favorably." (emphasis added)).

15

Watkins does not cite evidence to support her assertions about Larry Cabaniss. However, the court notes that the record does contain Watkins's deposition testimony about Kid One's treatment of Cabaniss. (Doc. 36-3 pp 50-51); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). The court has considered Watkins's deposition testimony about Cabaniss; that testimony indicates that Cabaniss was treated more favorably than *all* of the other drivers, not just the African-American ones. (Doc. 36-3 pp 50-51).

"Title VII addresses *discrimination*." *Ferguson v. Veterans Admin.*, 723 F.2d 871, 872 (11th Cir. 1984). Not all unpleasant or unfair employment practices are actionable under Title VII. "Title VII is not a shield against any kind of harsh treatment in the workplace," and it does not "require the employer to have good cause for its decisions." *Nix v. WLCY Radio*, 738 F.2d 1181, 1187 (11th Cir. 1984). The relevant issue for purposes of Title VII is not whether the employer's judgment or course of action is unreasonable, unfair, or erroneous, but whether the employer discriminated against the employee illegally on the basis of race or gender. *Id*. As long as the employer does not discriminate on an illegal basis, an employer is not in violation of Title VII for taking adverse action against an employee "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all." *Id*.

In this case, there is *no* evidence that Kid One discriminated against Watkins or treated her unfavorably *on the basis of race*. Specifically, the record contains no evidence that similarly situated non-African-American employees were treated more favorably than

16

Watkins; therefore, Watkins's Title VII race discrimination claims fail as a matter of law. *See Crawford*, 529 F.3d at 970 (holding that, to prevail on a Title VII race discrimination claim, a plaintiff must prove that she was treated less favorably than similarly situated employees outside of the plaintiff's protected class).

## II.   Gender Discrimination - Title VII

"The filing of an administrative complaint with the EEOC is ordinarily a jurisdictional prerequisite to a Title VII action." *Chanda v. Engelhard/ICC* 234 F.3d 1219, 1225 (11th Cir. 2000).   "A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination" that the plaintiff filed with the EEOC. *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 589 n.8 (11th Cir. 1994).   In her judicial complaint, Watkins alleges that Kid One deprived her of vacation pay, paid her lower wages than other employees, and terminated her employment illegally on the basis of her gender.   (Doc. 1).   However, Watkins's EEOC charge contains no inkling of a charge of gender discrimination, and no factual allegations that could reasonably lead to   an EEOC investigation of gender discrimination.   (Doc. 1-1 p. 1). Watkins's gender discrimination claim fails as a matter of law because she failed to exhaust her administrative remedies with respect to that claim.   See *Chanda,* 234 F.3d at 1225 ("Nothing in [the plaintiff's] EEOC filing mentions discrimination based on national origin, any complaint about such discrimination, or a claim under Title VII.   We must conclude, therefore, that a reasonable investigation based on the EEOC charge did not and would not

encompass retaliation based on complaints about national origin discrimination.").

## III.   Miscellaneous New Claims Raised in Watkins's Cross-Claim for Summary Judgment

Watkins alleges that she is entitled to summary judgment finding that Kid One violated labor laws and its own internal procedures by denying lunch breaks to the drivers and requiring drivers to drive more than ten hours per day.  (Doc. 40 p. 6).  In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002), the Supreme Court held that a complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," in accordance with Rule 8(a), Fed. R. Civ. P.  It is correct that "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). *Cf.* Fed. Rule Civ. Proc. 8(e) ("All pleadings must be construed so as to do justice").  However, even when viewed in accordance with these liberal principles of construction, Watkins's complaint cannot reasonably be construed as asserting *any* claim for violations of labor laws or regulations with respect to denial of breaks and required driving hours.

Further, the Eleventh Circuit has held that "[e]fficiency and judicial economy require that the liberal pleading standards under *Swierkiewicz* and Rule 8(a)" do not afford plaintiffs the opportunity to raise new claims in their summary judgment submissions. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).  Rather, "[a]t the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the

complaint in accordance with Fed. R. Civ. P. 15(a). A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Id*.

Moreover, even if, in light of Watkins's *pro se* status, Watkins's summary judgment submission could be construed as containing a motion to amend, the motion would be denied as untimely because it was filed on October 24, 2011, almost two months after the September 6, 2011 discovery deadline and almost three weeks after the October 6, 2011 deadline for dispositive motions.[7] (*See* Doc. 29).  Nowhere in Watkins's summary judgment filing does she give any indication of good cause for asserting new claims after the expiration of these deadlines.  Allowing the amendment would unduly prejudice Kid One because Kid One was not afforded notice of Watkins's newly asserted claims and a full opportunity to conduct discovery with respect to those claims.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that leave to amend need not be granted if the motion is the result of "undue delay . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.").

For these reasons, the court will not construe Watkins's summary judgment submission as an amendment to her complaint or as a motion to amend.  Because Watkins's newly-asserted claims are not properly before the court, she is not entitled to summary judgment on those claims. *Gilmour*, 382 F.3d at 1314 (holding that the pleading standard

---

[7]The court notes that, on August 10, 2011, the discovery deadline was extended from August 5, 2001 to September 6, 2011, and the deadline for dispositive motions was extended from September 6, 2011 to October 6, 2011.  (Doc. 29; Doc. 18).

reflected in Rule 8(a) "does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage").

## Conclusion

For the reasons stated above, it is the **RECOMMENDATION** of the Magistrate Judge that the motion for summary judgment (Doc. 34) filed by Kid One be granted; that Marva Watkins's motion for summary judgment (Doc. 39) be denied; that judgment be entered in favor of Kid One on all claims in Watkins's complaint; and that the complaint be dismissed with prejudice.

Further, it is

**ORDERED** that the parties are **DIRECTED** to file any objections to the Recommendation on or before **July 5, 2012**. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein*

*v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 21st day of June, 2012.

_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE